UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MAISHA CARSON, on behalf of J.D.,

        Plaintiff,

  -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

        Defendant.

_____

**DECISION and ORDER
No. 6:12-CV-6553(MAT)**

## I.  Introduction

Plaintiff Maisha Carson ("Plaintiff"), represented by counsel, brings this action on behalf of her daughter, J.D. ("Claimant") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying Claimant's application for Social Security Insurance ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

---

[1] Carolyn W. Colvin has replaced Michael J. Astrue as the Commissioner of Social Security. She therefore is automatically substituted as the defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II.   Procedural History

On November 20, 2009, Plaintiff protectively filed an application for SSI, alleging that Claimant has been under a disability beginning May 18, 2005, due to attention deficit hyperactivity disorder ("ADHD") and a learning disability. T.97-116.[2] On February 15, 2011, Administrative Law Judge Michael W. Devlin ("the ALJ") denied the application. T.12-29. On August 13, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T.1-4. This action followed.

## II.   Summary of the Administrative Record

With a date of birth of May 18, 2000, Claimant was 5-years-old on the alleged onset date, 9-years-old on the date of the application, and 10-years-old on the date of the ALJ's decision. T.26, 97.

### A.   Medical Records

On March 12, 2007, Claimant was referred to Licensed Clinical Social Worker Christy Paradise ("Counselor Paradise") at Crestwood Children's Center for her behavioral issues at school and at home. T.194. Claimant repeatedly got into trouble for hitting other children, not listening, and leaving class without permission. T.194. Claimant had been suspended in pre-kindergarten for pulling

---

[2]
Numerals preceded by "T." refer to pages in the transcript of the administrative record, submitted by Defendant as a separately bound exhibit.

a boy's pants down and looking under a stall in the bathroom. T.194. At home, Claimant reportedly "accidentally" set the kitchen on fire, and physically fought with her sibling. T.194. Claimant "seemingly struggle[d] most notably with transitions; school change"; "[her] father returning following incarceration," and with her relationship with her half-sister. T.195. Counselor Paradise concluded, after her examination of Claimant, that she possessed "limited insight into [her] problems." T.196. Counselor Paradise diagnosed Claimant with adjustment disorder with mixed disturbance of emotion and conduct, disruptive behavior disorder, and a sibling relational problem. T.196. Counselor Paradise recommended individual and family counseling sessions, and also recommended a psychiatric evaluation for additional insight into Claimant's diagnosis and for assistance managing a possible medication regime. T.196.

On April 23, 2007, Counselor Paradise noted Claimant's previous "fire-setting behaviors" (although it was not known if such behaviors were intentional or accidental), and the presence of sexualized behaviors in Claimant. T.198. Plaintiff reported that Claimant had been caught with her pants down with a boy on top of her and had been suspended from pre-kindergarten for pulling a boy's pants down and looking under a bathroom stall. T.199. Counselor Paradise noted that Claimant struggled with her behaviors at school while in the 1st grade, and recommended that the

Committee of Special Education suggest a possible behavioral plan to better support Claimant while at school. T.199. Counselor Paradise opined that Claimant understood some of her behaviors were inappropriate and even manipulative, but she nevertheless was slow to change them. T.199-200. Counselor Paradise reiterated her diagnosis of adjustment disorder with a mix of disturbing emotional conduct and disruptive behavior disorder. T.200.

On March 4, 2008, pediatric progress notes signed by Social Worker J. Thomas at Genesee Health Service noted that Claimant's teacher had reported continued impulsiveness in Claimant despite being prescribed Concerta for her ADHD. Claimant's behavior was described as "atrocious" when she was off her medication. T.242.

On March 5, 2008, pediatrician Dr. Webber suggested that Claimant take 10 mg of Concerta in the morning and 5 mg at noon. T.242. Claimant was referred for mental health purposes to Christine Steerman, Ph.D. T.242.

On April 24, 2008, Claimant underwent counseling with Dr. Steerman. T.204. Plaintiff reported Claimant does not listen to what she is told to do, fights with her siblings, and has difficulty following rules. T.205. Dr. Steerman diagnosed Claimant with ADHD by history. T.206.

At their May 1, 2008, counseling session, Dr. Steerman asked Claimant about a previous fire she had started in the kitchen of her home. T.207. Dr. Steerman noted that Claimant "put her head

down a bit as if embarrassed" and talked about the fire as if it had been purposefully set because "[Claimant] wanted to see the fire trucks come." T.207.

On June 16, 2008, Dr. Steerman met with Plaintiff who reported she saw Claimant hitting her younger brother with a belt. T.209. Plaintiff admitted that she had used a belt on Claimant's brother twice and realized that "this was probably not right." T.209. Plaintiff also stated that Claimant got her brother to eat paint and thinks Claimant convinced him to drink urine. T.209.

On January 8, 2010, consultative examiner Kavitha Finnity, Ph.D., examined Claimant. T 260. Dr. Finnity's medical source statement indicated that Claimant has "difficulty attending to and following age-appropriate directions and completing age-appropriate tasks." T.262. However, she found, Claimant "can adequately maintain appropriate behavior"; "can learn in accordance to [sic] cognitive functioning"; and "interacts adequately with peers and adults." T.262. Dr. Finnity diagnosed Claimant with ADHD and disruptive behavior disorder. T.262. Dr. Finnity recommended individual psychological and psychiatric treatment for Claimant, and parent-effectiveness training for Plaintiff. T.263.

On January 28, 2010, State agency review medical consultant K. Prowda completed a childhood disability form. T.265-66. Dr. Prowda found Claimant had "less than marked" limitations with respect to acquiring and using information and attending and

completing tasks. T.267.   Dr. Prowda found Claimant had "no limitations" with respect to the following: interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being. T.268.

**B.    School Records**

**Educational Records**

On September 27, 2010, Claimant's 5th grade teacher at Henry Hudson School (Rochester City School District #28), Lindsay Robach ("Ms. Robach"), noted that Claimant "was disruptive throughout the lesson and asked to stop several times." T.163. After being moved to another spot in the classroom, Claimant began to shout "inappropriate things", and when asked to go to another room, Claimant refused. T.163.

On September 28, 2010, when Claimant was asked to be quiet in the hallway, she retorted, "[T]est me, you won't do nothing [sic]." T.164.

On September 28, 2010, Claimant's teacher reported that she was "rude [and] disruptive all day." T.165. After serving a lunch detention, Claimant slapped another student across the face on her way out the door for dismissal. T.165.

On October 8, 2010, school personnel conducted an internal progress review of Claimant for the purpose of devising intervention strategies for her behavioral problems. On a scale of 1 to 5 (with 1 being the highest priority), Claimant's issues were

rated as a "1". T.155-56. With respect to behaviors interfering with learning, Claimant "call[ed] out inappropriately" and was "restless, overactive, [and] impulsive." T.157. With respect to conduct concerns, Claimant was oppositional, displayed both physical and verbal aggression, did not follow school rules, had poor relations with both peers and adults, and did not follow school norms. T.157-58. Claimant's behavior was "incredibly impulsive", and she was "always causing issues" due to her "bullying her other classmates with verbal language" and her tendency to "get very rough physically without noticing." T.158

On October 13, 2010, Case Manager Radley performed a response to intervention ("RTI") observation of Claimant in her 5th grade classroom taught by Ms. Robach. T.154. Case Manager Radley observed Ms. Robach approach Claimant to review directions for a simple assignment (write two facts about an explorer on an index card). Claimant responded by "spin[ing] in circles." T.154. Despite being asked to stop, Claimant kept spinning, walked over to the pillow section of the classroom, and yelled, "Robach!" T.154. Claimant ignored group instructions and yelled across the room to get the teacher's attention. T.154. Claimant inappropriately played with objects on her teacher's desk, and when asked to stop, responded, "[B]ut [sic] your face." T.154. Claimant also kept running around the room in her socks. Case Manager Radley noted that Claimant "ignored all expectations and directions for working on the

assignment (she was spinning around and pretending to write on incentive chart.). Teacher attempt[ed] both redirection and planned ignoring." T.154. These strategies were unsuccessful.

On October 22, 2010, the RTI team that noted Claimant's two primary concerns included being verbally/physically abusive and "out-of-seat". T.160. The RTI team was concerned that Claimant was overly aggressive, and as an example noted that "she will push through crowds. She is impulsive and aggressive which tends to get her in trouble." T.160. Claimant also had been referred to "SHIP" three times at that point during the year, twice for physical altercations. T.161. Claimant would "crawl on the floor and act inappropriately, usually toward the end of the day." T.161.

In a letter dated October 22, 2010, Ms. Robach noted that Claimant was "overly aggressive at times (verbally and physically)." T.162. During class lessons, Claimant would often be out of her seat with her shoes off, walking around the classroom; and interrupting other students while they were working by calling out, yelling, making barking noises, and making inappropriate comments and gestures (e.g., "flicking off" her peers, stuffing leaves up her shirt to simulate breasts and yelling at her classmates to look at her "boobies"). T.162. Ms. Robach observed that Claimant had had several referrals to the office from both her classroom and the physical education class. The day of the letter, Claimant's "behavior escalated to the point where she needed to be

removed from the classroom. Her removal from the classroom led to an in-school suspension." T.162.

On November 19, 2010, the RTI team meeting minutes indicate Claimant's medication (Concerta) had been increased and that Claimant's mother was to meet bi-weekly for school counseling. T.166-67.

### C. Hearing Testimony

The previously unrepresented Plaintiff testified on behalf of Claimant before the ALJ on December 16, 2010. T.31-52. Plaintiff explained she has a hard time getting Claimant to perform household chores. T.41. When asked to perform chores, Claimant will whine and throw things. T.42. Claimant is unable to sit down for a half hour doing homework, and "for the most part", Claimant only can sit still doing homework for 5 to 10 minutes.

### III. Standard of Review

Title 42 U.S.C., § 405(g) authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This Court's function is not to determine de novo whether a claimant is disabled, Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted), but rather to evaluate whether the Commissioner applied the correct legal standard in making the determination and, if so, whether such determination is supported

by substantial evidence in the record. E.g., <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g); <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2d Cir. 1998)).

This Court must independently determine if the Commissioner applied the correct legal standards in determining that the claimant is not disabled. See <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984). "Failure to apply the correct legal standards is grounds for reversal." <u>Id.</u> Therefore, this Court first reviews the Commissioner's application of the pertinent legal standards, and then, if the standards were correctly applied, then considers the substantiality of the evidence. See <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir.1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

**IV.  Determining Childhood Disability**

Under the Act, every individual who is considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months." Id., § 423(d)(1)(A).

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); see also Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004).

The SSA has promulgated a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of disability. 20 C.F.R. § 416.924(a); see also Pollard, 377 F.3d at 189. First, the ALJ must consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). "Second, the ALJ considers whether the child has a 'medically determinable impairment that is severe,' which is defined as an impairment that causes 'more than minimal functional limitations." Pollard, 377 F.3d at 189 (quoting 20 C.F.R. § 416.924(c)). Third, "if the ALJ finds a severe impairment, he or she must then consider whether the impairment 'medically equals' or . . . 'functionally equals' a disability listed in the regulatory 'Listing of Impairments'" as set forth in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (the "Listings"). Id. (quoting 20 C.F.R. § 416.924(c), (d)). Under the third step, to demonstrate functional equivalence to a listed

impairment, the child must exhibit "marked" limitations in two of six domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). These six domains consider a child's (1) ability to acquire and use information; (2) ability to attend and complete tasks; (3) ability to interact and relate with others; (4) ability to move about and manipulate objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(a)-(b). A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Social Security Ruling ("SSR") 09-1p directs consideration of the "whole child," which means that the ALJ must consider a child's everyday activities, determine all domains involved in performing them, consider whether the child's medically determinable impairments account for limitations in the child's activities, and determine the degree to which the child's impairments limit the child's ability to function age-appropriately in each domain. SSR 09-1p, Title XVI: Determining Childhood Disability Under The Functional Equivalence Rule-The "Whole Child" Approach, 2009 WL 396031, at *2-3 (S.S.A. Feb. 17, 2009).

## V.     The ALJ's Decision

The ALJ found that Claimant had not engaged in substantial gainful activity since November 20, 2009, the application date. T.18. The ALJ further found that Claimant has the following severe impairments: ADHD and disruptive behavior disorder. T.18. However, the ALJ determined, these impairments, considered singly or in combination, were insufficient in severity to meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T.18-26. Accordingly, the ALJ found Claimant not disabled. T.26.

## VI.  Analysis

The ALJ found that Claimant had one severe impairment, ADHD, but summarily concluded that Claimant did not fulfill the criteria for Listing 112.01 (ADHD), essentially because Claimant does not have "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Specifically, after considering the pertinent six domains, the ALJ found that Claimant has "less than marked" limitations in three of the domains (acquiring and using information; attending and completing tasks; and interacting and relating with others); "no limitation" in two domains (moving about and manipulating objects, and health and physical well-being); and "marked" limitation in one domain (caring for herself).

**A.  Failure to Properly Weigh the Opinions from the Consultative Psychologist and State Agency Psychological Consultant**

The ALJ afforded "significant weight" to the opinions of consultative psychologist Dr. Finnity and State agency psychological consultant Dr. Prowda based on "programmatic expertise and consistency with the record." T.21. However, the ALJ erred in affording significant weight to these opinions because they were stale and conflicted with substantial evidence in the record. As Plaintiff notes, Dr. Finnity's opinion was rendered on January 18, 2010; and Dr. Prowda's opinion was rendered on January 28, 2010. T.260, 266. Their opinions necessarily do not include probative evidence, namely, records from Claimant's school produced in October and November of 2010. T.154-67.

**1.  Dr. Prowda**

State agency review consultant Dr. Prowda's opinion should have been afforded limited weight, as it was not based on a personal examination of Claimant. Moreover, it was based on an incomplete record since it was rendered before the receipt of school records from fall semester 2010 detailing Claimant's substantial and repeated behavioral issues. See Dowling v. Colvin, No. 5:12–CV–1181 (LEK/VEB), 2013 WL 6800207, at *7 (N.D.N.Y. Dec. 20, 2013) (opinion of a non-examining State Agency review consultant opinion "should have been afforded limited weight, as it was not based on an examination and, more importantly, was based on

-14-

an incomplete record insofar as it was rendered before [the claimant's treating source] provided her assessment. . . .") (citing <u>Griffith v. Astrue</u>, 08-CV-6004, 2009 WL 909630, at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); <u>McClean v. Astrue</u>, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009)).

While the opinion of a non-examining consultant may constitute substantial evidence where consistent with the record as a whole, <u>see</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 (2d Cir. 1983), that is not the case here. Dr. Prowda found that Claimant had "less than marked" limitations with respect to acquiring and using information and attending and completing tasks. T.267. Dr. Prowda also opined that Claimant had no limitations with respect to the following: interacting and relating with others, moving about and manipulating objects, caring for [herself], and health and physical well-being.

Dr. Prowda's opinion that Claimant has "no limitations" in interacting with others is at odds with her diagnoses of ADHD and disruptive behavior disorder. Moreover, it is inconsistent with particular incidents contained in the treatment notes which Dr. Prowda ostensibly reviewed. For instance, in Dr. Steerman's notes dated June 16, 2008, Plaintiff reported that Claimant hit her younger brother with a belt, got her brother to eat paint, and

likely convinced him to drink urine. T.209. On March 12, 2007, Counselor Paradise reported that Claimant had been suspended in pre-kindergarten for pulling a boy's pants down and looking under a stall in the bathroom. T.194.

Dr. Prowda's opinion also is inconsistent with subsequent school records for the fall 2010 school semester, which indicate that Claimant has difficulties in regard to interpersonal relationships with adults and peers. On September 28, 2010, after serving a lunch detention, Claimant slapped another student across the face during dismissal. T.165. On October 8, 2010, school personnel rated Claimant's behavioral issues as a "1" on a scale of 1 to 5 (with 1 being the highest priority). T.155-56. This assessment was based on Claimant's display of a number of behaviors which interfered with her ability and her classmates' ability to learn, such as "call[ing] out inappropriately" and being "restless, overactive, [and] impulsive." T.157. Claimant was oppositional, displayed both physical and verbal aggression, did not follow school rules, had poor relations with both peers and adults, and did not follow school norms. T.157-58. Her behavior was "incredibly impulsive", and she was "always causing issues" due to her "bullying her other classmates with verbal language" and her tendency to "get very rough physically without noticing." T.158. On October 22, 2010, Ms. Robach wrote a letter noting that Claimant can be "overly aggressive at times (verbally and physically)."

T.162. On September 28, 2010, Claimant's teacher reported that she was "rude [and] disruptive all day." T.165.

The Court notes that although ALJ purported to give "significant weight" to Dr. Prowda's assessment, the ALJ nevertheless opined that Claimant has "marked limitation in ability to care for herself." T.25. Thus, the ALJ implicitly rejected Dr. Prowda's conclusion that Claimant has "no limitation" with regard to caring for herself, but he provided no rationale for rejecting this particular aspect of Dr. Prowda's opinion.

### 2. Dr. Finnity

Likewise, Dr. Finnity's opinion is inconsistent with the record as a whole and ignores the substantial evidence of Claimant's difficulties in conforming to behavioral norms at school and at home. Dr. Finnity concluded that, based on her single examination of Claimant, she "can adequately maintain appropriate behavior"; "can learn in accordance to [sic] cognitive functioning"; and "interacts adequately with peers and adults." T.262. This conclusion is belied by even a cursory review of Claimant's school records and the treatment notes from Counselor Paradise and Dr. Steerman. The fact that Claimant was cooperative and friendly in a single, controlled, situation, where she was interacting one-on-one with an authority figure is of negligible weight when compared to the oppositional and anti-social behaviors displayed by Claimant at home and at school. See Rivera v. Colvin,

No. 1:11-cv-04889-CM-RLE, __ F. Supp.2d ___, 2014 WL 929728, at *9 (S.D.N.Y. Mar. 10, 2014); <u>Thompson v. Barnhart</u>, No. 02 CV 4930(SJ), 2004 WL 896663, *7 (E.D.N.Y. Mar. 26, 2004) ("The ALJ also fails to consider Claimant's functioning outside of the structured and highly supportive setting of a special education classroom or a mental health clinic.") (citing 20 C.F.R. § 416.924a(b)(5)(iv) (stating that determination of child's limitations should be based, in part, on how child behaves when structures are removed)).[3]

An ALJ is obligated to consider "all evidence" in the case record before making a determination as to whether a claimant is eligible for disability benefits. 20 C.F.R. § 416.920(a)(3); <u>see also Sutherland v. Barnhart</u>, 322 F. Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims."); <u>accord</u> <u>F.S. v. Astrue</u>, 2012 WL 514944, at *10 (N.D.N.Y. 2012) (citations omitted). Here, by affording

---

[3]  In addition, Dr. Finnity's opinion and Dr. Prowda's opinion are not necessarily consistent with each other insofar as Dr. Finnity indicated that Claimant has "difficulty attending to and following age-appropriate directions and completing age-appropriate tasks[,]" T.262, while Dr. Prowda found that Claimant had "less than marked" limitations with respect to acquiring and using information and attending and completing tasks, T.267. The ALJ did not explain how he resolved this apparent discrepancy.

"significant weight" to the opinions of two sources who did not take into consideration months of school records detailing Claimant's persistent behavioral problems, the ALJ necessarily did not consider "all evidence" relative to Claimant's disability claim. Remand accordingly is required. See Lopez v. Secretary of Dep't of Health and Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.").

### B.   Failure to Develop the Record

Plaintiff contends that the ALJ did not properly develop the record because he failed to obtain an opinion regarding Claimant's function-by-function limitations from Claimant's teacher, Ms. Robach.

The ALJ has an affirmative obligation to develop the administrative record, and this duty is "heightened" where, as here, a claimant proceeds pro se at the administrative hearing level. Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks and citations omitted). As noted above, the opinions by Dr. Finnity and Dr. Prowda, upon which the ALJ heavily relied, did not take into account any of the comments and observations by the individual who spent time with Claimant on a daily basis, Ms. Robach.

As a teacher, Ms. Robach is considered an "other source". See 20 C.F.R. § 416.913(d)(2) ("other sources" include "educational personnel such as teachers and daycare workers"). While the opinion of an "other source" cannot "establish the existence of a medically determinable impairment," it may be used as a means of providing insight into a child's degree of impairment and functional ability. See SSR 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Opinions offered by teachers "should be evaluated by using the [20 C.F.R. § 416.927] factors," although "[n]ot every factor . . . will apply in every case." SSR 06-03p, 2006 WL 2329939, at *5; see also Bonet ex rel. T.B. v. Astrue, No. 1:11-cv-1140(GLS), 2012 WL 3544830, at *7 (N.D.N.Y. Aug. 16, 2012). The Court cannot say that the ALJ's error in developing the record by contacting Ms. Robach to obtain a function-by-function evaluation was harmless. "An opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source[.]" SSR 06-03p, 2006 WL 2329939, at *6. As an example, SSR 06-03p notes this could occur where the "non-medical source" "has seen the individual more often and has greater knowledge of the individual's functioning over time[,]" and that source's opinion "better supporting evidence and is more consistent with the

evidence as a whole[,]" SSR 06-03p, 2006 WL 2329939, at *6.
Ms. Robach clearly has interacted with Claimant "more often and has
greater knowledge of the individual's functioning over time" than
either Dr. Prowda or Dr. Finnity. Her notes also seem to be more
consistent with the earlier treatment notes by Counselor Paradise
and Dr. Steerman. Thus, a function-by-function report by Ms. Robach
may very well outweigh the opinions from the "acceptable medical
sources" in the record.

   **C.   Failure to Properly Analyze Listing 112.11**

     To meet or equal Listing § 112.11 (ADHD), a claimant's
condition must satisfy two criteria set forth in Paragraphs A and
B. The relevant portions of Listing § 112.11 provide as follows:

> 112.11   Attention   Deficit   Hyperactivity   Disorder:
> Manifested by developmentally inappropriate degrees of
> inattention, impulsiveness, and hyperactivity.
> The required level of severity for these disorders is met
> when the requirements in both A and B are satisfied.
> A. Medically documented findings of all three of the
> following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
> And
> B. For children (age 3 to attainment of age 18),
> resulting in at least two of the appropriate age-group
> criteria in paragraph B2 of 112.02 [Organic mental
> disorders]).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11; 20 C.F.R. Pt. 404,
Subpt. P, App. 1, § 112.02(B)(2). Here, the ALJ found that
although Claimant's ADHD is a severe impairment, "the record
clearly indicates, as discussed below, that [her] impairments cause

only minimal limitations." T.18. Accordingly, the ALJ concluded, Claimants' "impairments [sic] do not meet or equal Listing 112.11." Id. There is no dispute that Claimant suffers from ADHD, but the ALJ did not discuss the remaining factors in the Listing, namely, whether Claimant suffers from marked inattention, impulsiveness and hyperactivity, or whether Claimant suffers from the criteria in Listing § 112.02B.

The ALJ's conclusion that Claimant does not meeting the ADHD Listing simply bootstraps onto his later finding regarding functional equivalence. However, courts have found that "the analyses under the attention deficit hyperactive disorder listing, 112.11, and functional equivalence are not sufficiently identical to the point that a failure to find functional equivalence conclusively precludes a finding that Plaintiff's symptoms meet or medically equal a listing." Johnson ex rel. J.J.G. v. Colvin, Civil Action No. 6:12-cv-01139-RBH, 2013 WL 5309239, at *4 (D. S.C. Sept. 17, 2013) (citing M.G. v. Commissioner of Social Sec., 861 F. Supp.2d 846, 859 n. 6 (E.D. Mich. 2012) ("[T]o the extent that the Commissioner would assert that the ALJ's analysis regarding functional equivalence suffices for the required 'meets' and 'medically equals' analysis, there is case law to the contrary.") (collecting cases)). Indeed, such a finding would effectively render the listings superfluous in cases involving impairments such as severe ADHD. Id.

Furthermore, as discussed above, the ALJ's finding of no functional equivalence is based on an erroneous weighing of the medical opinions and a disregard of probative evidence, namely, school records from the fall 2010 semester. Therefore, the Court cannot find that the ALJ's determination regarding Listing § 112.01 is the product of the correct application of the relevant legal principles or is supported by substantial evidence. Upon remand, the ALJ is instructed to properly consider and evaluate the entire record and apply the correct legal standards with regard to Listing § 112.11.

### D.   Failure to Perform a Credibility Assessment

Plaintiff argues that the ALJ failed to evaluate explicitly the credibility her testimony regarding the intensity and persistence of her daughter's symptoms and limitations on functioning. T.12-29. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about a claimant's impairments when there is conflicting evidence about the extent of limitations in functioning or other alleged symptoms. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings."). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).[4]

Here, there is conflicting evidence in the record regarding the nature and extent of Claimant's impairments, as well as the resulting limitations manifested in the six domains of functional equivalence. Accordingly, it was incumbent upon the ALJ to evaluate the credibility[,]" Warren ex rel. T.M.W. v. Colvin, No. 12-CV-00544-JTC, 2014 WL 200231, at *9 (W.D.N.Y. Jan. 16, 2014), of Plaintiff with regard to her testimony and other statements of record pertaining to her daughter's condition.

The ALJ acknowledged his duty to make a credibility assessment, but he did not render such a finding. For instance, the ALJ failed to assess Plaintiff's testimony regarding Claimant's activities of daily living, namely, that it is difficult for her to get Claimant to perform household chores, and that her response to being asked to do so is to whine. Plaintiff also gave testimony regarding Claimant's inability to stay on task, i.e., she is unable to sit down for a half hour doing homework. However, the ALJ did

---

[4]

While the discussion regarding the process for assessing credibility refers only to DIB claims under title II and SSI claims under title XVI by individuals 18 years or older, "the same basic principles with regard to determining whether statements about symptoms are credible also apply to claims of individuals under age 18 claiming disability benefits under title XVI." SSR 96-7p, 1996 WL 374186, at *1 n. 1.

not indicate whether he credited that testimony. The ALJ also failed to assess Plaintiff's testimony regarding Claimant's impulsive and potentially dangerous behaviors, such as her tendency to disappear from the house without letting anyone know and the incident in which Claimant sent a photograph of a "private part" to an adult over a cellular phone, which resulted in the involvement of the police and FBI. These items of testimony are relevant and probative of Claimant's limitations in various of the domains of functioning.

Defendant argues that the ALJ, by referring to some of Plaintiff's testimony in his decision, implicitly credited it. This is insufficient to constitute the credibility assessment required by the Commissioner's regulations. See Warren ex rel. T.M.W., 2014 WL 200231, at *9 (finding that remand was required for the ALJ to perform a credibility assessment where the ALJ summarized some of the claimant's mother's testimony, but did not assess the credibility of her statements about the claimant's symptoms and their functional effects). "In the absence of the required finding on credibility, the reviewing court is unable to assess the weight the ALJ gave to the witnesses' statements, or the reasons for that weight." Id.

## VII. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Plaintiff's motion for

judgment on the pleadings is granted. The matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

       **SO ORDERED**.

                            S/Michael A. Telesca

                            _____

                            HONORABLE MICHAEL A. TELESCA
                            United States District Judge

DATED:      May 1, 2014
             Rochester, New York